# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALLGOOD ENTERTAINMENT, INC. and
ALLGOOD CONCERTS, LLC,

               Plaintiffs,

    - against -

DILEO ENTERTAINMENT AND TOURING, INC.,
FRANK DILEO, ANSHUTZ ENTERTAINMENT
GROUP, AEG LIVE, LLC, AEG LIVE NY, LLC,
and JOHN BRANCA and JOHN MCCLAIN, Special
Administrators of the Estate of Michael Jackson,

               Defendants.
------------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/29/10

09 Civ. 5377 (HB)

OPINION &
ORDER

**Hon. Harold Baer, Jr., District Judge:**

      This case is about whether or not Michael Jackson, through his alleged manager Frank Dileo, agreed to perform a concert with the plaintiffs, AllGood Entertainment, Inc. and AllGood Concerts, LLC, and then later reneged on this agreement in order to perform a different concert with the defendants Anshutz Entertainment Group, AEG Live, LLC, and AEG Live NY, LLC. Plaintiffs allege breach of contract, promissory estoppel, and fraud by Frank Dileo and his management company, Dileo Entertainment and Touring, Inc., and allege tortious interference of contract on the part of Anshutz Entertainment Group and the other AEG entities; Plaintiffs also seek a permanent injunction. Both sets of defendants have moved to dismiss for failure to state a claim. For the reasons below, the tortious interference, fraud, and permanent injunction claims are DISMISSED.

## I. BACKGROUND

      Plaintiffs AllGood Entertainment, Inc. and AllGood Concerts, LLC ("Plaintiffs" or "AllGood") are New Jersey corporations that "promote live events, including but not limited to concerts, festivals and personal appearances, featuring internationally known performing artists." Am. Compl. ¶¶ 1-2, 14. Defendants John Branca and John McClain ("Jackson Estate Defendants") are Special Administrators of the Estate of Michael Jackson, the famous musician

who died in June of 2009. *Id.* ¶¶ 5-7. Defendants Anshutz Entertainment Group, AEG Live, LLC, and AEG Live NY, LLC (the "AEG Defendants") are all organized under Delaware law and are located in New York and Los Angeles, California respectively, and are "one of the leading providers of live entertainment and sports in the world." *Id.* ¶¶ 3-4, 17. Finally, Dileo Entertainment and Touring, Inc. is a Tennessee corporation with an office in Nashville and Frank Dileo, a Tennessee resident, is the CEO of Dileo Entertainment as well as the alleged personal manager, or former manager, of Michael Jackson (together the "Dileo Defendants"). *Id.* ¶¶ 8-9, 16.

On October 21, 2008, Patrick Allocco, CEO of AllGood, flew to Las Vegas, Nevada for a meeting with Joe Jackson, father of the singer, and spoke to him of AllGood's desire to promote a concert featuring the return of Jackson[1], who had not toured in many years, or a potential "Jackson Family"[2] reunion concert with Michael Jackson. Am. Compl. ¶¶ 18-19. Joe Jackson allegedly told Allocco to reach out to Frank Dileo, as he was Jackson's manager; Allocco also presumed this to be true based on general industry knowledge of Dileo's representation of the musician. *Id.* ¶¶ 20-21. On November 20, 2008, Allocco met with Dileo and another Dileo Entertainment representative at a restaurant in Nashville, Tennessee, where he discussed his desire to promote a concert with Jackson and his family. *Id.* ¶ 24-26. Dileo allegedly confirmed that he was the manager of Michael Jackson, "could make the [e]vent a reality," and said that he already spoke to Jackson about the idea; Jackson was supposedly very interested. *Id.* ¶¶ 27-28. The next day, Allocco had a second meeting with Dileo, this time at the Dileo Entertainment offices in Nashville. *Id.* ¶ 29. There, he allegedly asked Dileo if "he had the authority and the power to bind Jackson and/or the Jackson Family to an agreement requiring them to perform," and Dileo claimed that he did. *Id.* ¶¶ 30-31. AllGood asserts it was never notified by Jackson, Dileo, or any other representative that Dileo was not Michael Jackson's manager or unauthorized to act on his behalf.[3] Am. Compl. ¶ 48.

As result of these meetings, Plaintiffs and the Dileo Defendants allegedly entered into two agreements. First, pursuant to the "Binder Agreement," AllGood would promote a concert

---

[1] "Jackson" only refers to Michael Jackson, and any other member of the Jackson family will be named in full.
[2] "Jackson, along with his siblings Janet Jackson, Tito Jackson, Jermain Jackson, Marlon Jackson, Randy Jackson, and Jackie Jackson collectively comprise a family of world renowned performing artists." Am. Compl. ¶ 15.
[3] In what appears to be fairly transparent artful pleading, Plaintiffs never quite allege that the Dileo Defendants represented Jackson. Similarly, Plaintiffs use "and/or" throughout such that it is difficult to divine precisely what did or did not occur and what was or was not said or promised.

featuring Jackson and the Jackson Family tentatively titled "The Jackson Family Reunion: A Concert for the World," in consideration for $24 million. Am. Compl. ¶ 50. It was allegedly signed by the Dileo Defendants "on behalf of" Michael Jackson and the Jackson Family. *Id.* ¶ 50-51. The actual three-page agreement, not attached to either the original nor amended complaint, does not include the aforementioned concert title, and actually states, *inter alia*, that it is a "letter of intent ... as to the essential terms of the Live Performance of the Jackson Family." Decl. of Caroline J. Heller (Heller Decl.), Ex. B at 1.[4] It sets out $24 million as the "Artist Price," and required that a $2 million partial payment be made by AllGood to Dileo Entertainment on or before December 31, 2008 "to secure the Jacksons and show good faith," as well as another $400,000 that would be due "immediately upon written confirmation of this deal." *Id.* ¶ 3(A). The Binder Agreement also provided "120 days to acquirer [sic] written confirmation from all family members involved including Michael Jackson." *Id.* ¶ 3(B). The Binder Agreement also contains a number of conditions, including "Pre-Closing Covenants," confidentiality and non-competition clauses, and an indemnification clause. It further states "[u]pon receipt of a signed copy of this letter, then we will proceed with full acting contract Agreement at later agreeable date." *Id.* at 3. It is signed by Allocco for "PURCHASER ... AllGood Entertainment Inc.", and by Frank Dileo for "Dileo Enterainment & Touring Inc." *Id.* at 3. Contrary to the representations in the Amended Complaint, nowhere in the Binder Agreement does it state that Dileo or the Dileo Defendants signed "on behalf of" Michael Jackson or the Jackson Family, but it does state that "[t]his contract constitutes a complete and binding agreement between the PURCHASER and the Jacksons (ARTIST/S)." *Id.* at 3.

The second document, the "NDA Agreement," was made on or around November 26, 2008, and allegedly provided for an eighteen month confidentiality and nondisclosure agreement between "AllGood, Dileo and Dileo Entertainment, acting as duly authorized agents and representatives for Jackson and/or the Jackson Family." Am. Compl. ¶ 58. Plaintiffs also allege that it "incorporated and referenced the subject matter of the Binder Agreement" and that "the Dileo Defendants agreed in the NDA Agreement to apply New York law and to submit to the jurisdiction of New York State for purposes of any breach of said agreements." *Id.* ¶ 59. Like the Binder Agreement, the actual document referenced here was not attached to either complaint.

---

[4] The Binder Agreement is not paginated and has text in both numbered and unnumbered paragraphs. For the sake of clarity, where text is quoted from unnumbered paragraphs, the actual page number will be provided. In all other instances, the paragraph number and sub-letter (if applicable) will be cited.

3

It is not signed by "AllGood, Dileo and Dileo Entertainment," but rather by Allocco, Dileo, and four other third-party individuals, with no indication that any signed for a particular corporate entity like AllGood or Dileo Entertainment. Heller Decl., Ex. C at 3. Under "SYNOPSIS," the agreement states that "[t]he undersigned individual acknowledges that the information contained in the Dileo Entertainment and Touring Agreement ... dated November 25, 2008 by and between AllGood Concerts, LLC ... and Dileo Entertainmnet and Touring, Inc ... is confidential." *Id.* ¶ 1. It further states that the "purpose of disclosure" is "presenting the undersigned individual with certain valuable, confidential, and propriety information." *Id.* ¶ 2. The term is for eighteen months and does appear to include confidentiality and noncompete clauses. *See id.* ¶¶ 4, 11, 16. The agreement states that it will be "governed by and construed in accordance with the laws of the State of New York," and that the Agreement as a whole "supersedes all previous agreements between the parties regarding Confidential Information and Non-Circumvention," but says nothing specifically about incorporation with the Binder Agreement. *Id.* ¶¶ 13-14.

Plaintiffs claim that, in the months following these agreements, Allocco and AllGood representatives worked to put together the allegedly agreed-upon concert, and incurred significant expenses doing so. Am. Compl. ¶¶ 33-35. During this time, Allocco also claims to have spoken regularly with Dileo and "almost daily" with Mark Lamicka, one of Dileo's business associates and one of the third-party signatories of the NDA Agreement. *Id.* ¶ 36. Dileo allegedly continued to represent that he was a member of "Jackson's small inner circle of advisors, that Jackson wanted to do a concert, that he would produce Jackson, and that the concert would happen." *Id.* ¶ 37. Plaintiffs claim that "at some point," it became clear that the Dileo Defendants were not "acting in good faith" and "could or would not follow through on their obligations under the parties' agreements." *Id.* ¶ 39. Thereafter, AllGood allegedly learned that Jackson and Dileo "secretly teamed up" with the AEG Defendants to produce a concert or series of concerts in London, along with "perhaps" a pay-per-view Jackson Family reunion event. *Id.* ¶ 40. Plaintiffs claim, "upon information and belief," that AEG knew of a deal between Dileo and AllGood, but due to "dominance and power in the live performance industry, coerced and/or induced Dileo and Jackson to disregard the agreements with AllGood and to work with it instead." *Id.* ¶ 41.

Based on these allegations, AllGood asserts causes of action for breach of contract, promissory estoppel, fraud, tortious interference with contract, as well as a permanent injunction

against any concert by Jackson during the alleged "blackout period." Plaintiff seeks $300 million in compensatory damages, $300 million in punitive damages, and attorneys' fees. The AEG Defendants and the Dileo Defendants have both moved to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

### A. Legal Standard

A complaint will be dismissed under Rule 12(b)(6) if there is a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P.12(b)(6). To survive a motion to dismiss on this ground, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they "plausibly give rise to an entitlement to relief." *Id.* at 1950. A court may consider "undisputed documents, such as a written contract attached to, or incorporated by reference in, the complaint," *Chapman v. New York State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008) (internal citations and quotations omitted); *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," however, dismissal is appropriate. *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950.).

### B. The AEG Defendants

AllGood alleges that the AEG Defendants tortiously interfered with their contract with the Dileo Defendants and Michael Jackson, because they "deliberately, intentionally, and knowingly induced Jackson and the Dileo Defendants to breach and repudiate" the Binder and NDA Agreements. Am. Compl. ¶ 87. According to the AEG Defendants, this claim must be dismissed as a matter of law. They argue that New Jersey law applies to this tort claim, that one of the necessary elements of tortious interference is malice or intent to interfere, and that AllGood has failed to allege any facts to show either. Plaintiffs claim that New York, California

or Texas law governs, and that none require a showing of malice or intent to satisfy the pleading standards.

When sitting in diversity, federal courts must apply the forum state's choice-of-law rules. *See Finance One Public Co. v. Lehman Bros. Special Financing, Inc.*, 414 F.3d 325, 331 (2d Cir. 2005). In New York, the first step in any case presenting a potential choice-of-law issue is to determine whether there is an "actual conflict" of laws. *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 151 (2d Cir. 2008) (citing *In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223 (1993)). To be an "actual conflict," the difference between the laws of the two jurisdictions need not be outcome-determinative, but must provide differing substantive rules that are relevant to the matter at hand, and the difference must have a significant possible effect on the outcome of the trial. *See Finance One*, 414 F.3d at 331 (citations omitted). Here, there is a clear actual conflict between New York and New Jersey law[5] on tortious interference with contract. In New York, the elements for the cause of action are (i) the existence of a valid contract with a third party; (ii) defendant's knowledge of that contract; (iii) defendant's intentional and improper procuring of a breach; and (iv) damages. *See White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007). Under New Jersey law, the elements are (i) the plaintiff has a protectable interest, i.e., valid contract with a third party; (ii) the interference with that protected interest was intentional and malicious; (iii) the interference caused the loss; and (iv) plaintiff was damaged. *See Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751-52 (1989); *see also DiMaria Const., Inc. v. Interarch*, 351 N.J. Super. 558, 567 (N.J. Super. Ct. App. Div. 2001).

The principal difference between these laws is New Jersey's "malice" element, which is "defined to mean that the interference was inflicted intentionally and *without justification or excuse*." *Johnson & Johnson v. Guidant Corp.*, 525 F. Supp. 2d 336, 360 (S.D.N.Y. 2007) (citing *DiMaria*, 799 A.2d at 560) (emphasis added). An interference can be "without justification or excuse," and thus tortious, in either of two senses: (i) the interest pursued is illegitimate or (ii) the means used are inappropriate. *Johnson & Johnson*, 525 F. Supp. 2d at 360. "Competition and financial self-interest are regarded by New Jersey law as legitimate interests." *Id.* As such, to satisfy the malice element in New Jersey, a plaintiff must affirmatively show that the defendant harbored some improper intention beyond mere

---

[5] Plaintiffs also argue that there is no conflict between New York and California or Texas law, two other state's laws that they argue may be applied. However, because there are very few contacts in this case to these states, *see supra*, the issue essentially boils down to the application of New York or New Jersey law.

6

competition or financial self-interest, or that the defendant employed inappropriate means. *See id.* By contrast, New York does not require an affirmative showing of lack of justification or excuse, but instead recognizes an "economic interest" defense to a tortious interference claim. Its availability is limited to actions undertaken by the defendant in order to protect its legal or financial stake in the breaching party's business and "[a] defendant who is simply plaintiff's competitor and knowingly solicits [plaintiff's] contract customers" is not entitled to the economic interest defense by virtue of the fact that it was merely pursuing its own economic interest or competitive advantage. *White Plains*, 8 N.Y.3d at 426. In the present case, where AllGood and the AEG Defendants are merely competitors, whether or not a Plaintiff must demonstrate "malice" will obviously affect the outcome of the case, and presents an actual conflict of laws.

AllGood first insists that New York law applies because of the choice-of-law provision in the NDA Agreement. However, AllGood's tortious interference claim against AEG quite self-evidently sounds in tort, not in contract law. *See White Plains*, 8 N.Y.3d at 425 (referring to tortious interference as a "commonly asserted tort"). "Under New York law ... tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract ... ." *See Finance One*, 414 F.3d at 335 (noting further that a choice-of-law provision could presumably be drafted to include tort claims, but "no reported New York cases present such a broad clause"). Thus, the choice-of-law provision contained in the NDA Agreement, if it is even applicable in this case at all, *see infra*, does not control.

When presented with a tort claim, New York law requires an "interest analysis" for the proper choice of controlling law. *See Finance One*, 414 F.3d at 336 (citing *In re Allstate Ins. Co.*, 81 N.Y.2d 225 (1993)). It is a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Finance One*, 414 F.3d at 337 (citing *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66 (1993)). This requires two separate inquiries: (i) what are the significant contacts and in which jurisdiction are they located, and (ii) what is the purpose of the law, to regulate conduct or allocate loss. *See Cooney*, 81 N.Y.2d at 72; *see also K.T. v. Dash*, 37 A.D.3d 107, 111 (N.Y.App.Div. 2006). "Loss-allocating rules are applicable once there is admittedly tortious conduct, while conduct-regulating rules are

those people use as a guide to governing their primary conduct." *Dash*, 37 A.D.3d at 112-13 (citing *Schultz v Boy Scouts of Am.*, 65 N.Y.2d 189, 198 (1985)). Here, plainly the tortious interference cause of action is a conduct-regulating rule, as it instructs people on how to interact with entities that have contractual agreements with third parties. *See, e.g., Hidden Brook Air, Inc. v. Thabet Aviation Intern. Inc.*, 241 F. Supp. 2d 246, 277 (S.D.N.Y. 2002); *Discover Group, Inc. v. Lexmark Intern., Inc.*, 333 F. Supp. 2d 78, 85 (E.D.N.Y. 2004).

If the purpose of the competing laws is to regulate conduct, as it is here, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders. *See Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 522 (1994) (citing *Cooney*, 81 N.Y.2d at 72); *see also Hidden Brook Air*, 241 F.Supp.2d at 277 ("As tortious interference with contractual relations is conduct-regulating, I must look to the locus of the tort to determine which jurisdiction's law should apply."). "Additionally, New York courts look for guidance to the factors listed in section 145 of the Restatement of the Law (2nd) Conflict of Laws (the "Restatement")." *BFI Group Divino Corp. v. JSC Russian Aluminum*, 481 F. Supp. 2d 274, 285 (S.D.N.Y. 2007) (collecting cases). These include the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered. *See* Restatement (Second) of Conflict of Laws § 145.

This action does not present a clear locus related to the alleged tortious conduct, as it involves the negotiation, performance, and alleged interference with a contract that touched upon many different fora, including Tennessee, Nevada, and even London. On balance, however, the majority of contacts related to the alleged tortious conduct are in New Jersey. Both AllGood plaintiffs are incorporated in New Jersey, and both are headquartered in the state. The Binder Agreement itself was signed and notarized in New Jersey. To make the cheese more binding, the Binder Agreement further indicates that the AllGood entities are "located in Convent Station, New Jersey." Heller Decl., Ex. B. Unlike contracts where a specific course of conduct is described, or where performance is set for a particular location, the alleged agreements in this case only state that AllGood and the Dileo Defendants would have Michael Jackson and/or the Jackson Family perform a concert of "150 minutes in total," and never states where the concert would be performed nor where any other particular action need occur. *See id.* In other words,

8

the only thing we know for certain about the alleged contract is that the parties asserting a breach are based in New Jersey and would have ultimately received the benefit of its bargain in that state.

Plaintiffs contend that the tortious conduct occurred in California, Texas, or New York, all of which coincidentally do not have a malice element that AllGood would need to allege to avoid dismissal of its tortious interference claim. The only connection to California is that one of the AEG Defendant's has its place of business in Los Angeles. Plaintiff insists for the first time in its opposition papers that the concert was to be held in Texas —though the Court never read any such thing in the Amended Complaint or in the Binder Agreement— which brings me back to the cheese metaphor, this time with an odor, since Texas law, like New York, has no malice element and would be more favorable to AllGood. All that said, I need not seriously consider this unsupported, unpled, and dubious assertion. Finally, AllGood points to a series of alleged contacts in New York, none of which are as significant or related to the tortious conduct as New Jersey. AllGood generally alleges phone calls, meetings, and other negotiation-related activities in New York, but once again the odor is pervasive since they come with no explanation as to how these actions are related to the alleged tortious conduct of the AEG Defendants; indeed the claims are so vague as to be nearly fact-free. AllGood claims that the money they were to be paid would initially go to Frank Dileo's accountant in New York, but this assertion is nowhere in the Binder Agreement or pled in the Amended Complaint, and even if it were it is less relevant than the fact that the money would in the last analysis go to AllGood in New Jersey. The sole relevant pleading related to tortious interference in New York is Plaintiff's claim of "marketing and promotional activities for and payments and monies received under the relevant agreements with AEG to be held in London, agreements, meetings and telephone call by and between the Dileo Defendants and third parties, Plaintiff and/or AEG in connection with the production and promotion of Plaintiff's and/or AEG concerts." *See* Am. Compl. ¶ 13. First, AllGood does not even appear certain that AEG-related conduct occurred in New York, relying on the use of "and/or" to simply suggest its possibility, and perhaps more odor to the cheese. Second, and more importantly, there is little indication of how it interfered with the performance of the Binder Agreement. By contrast, it is clear that if the AEG Defendants tortiously interfered, an injury would be caused to corporate entities organized under New Jersey law and located in New

Jersey. The parties allegedly harmed are located there, ultimately expected to gain the benefits of the contract there, and the contract was in part executed there.

As a result, New Jersey law applies to this claim, and this cause of action must be dismissed for failure to plead malice on the part of the AEG Defendants. The allegation that the AEG Defendants "due to [their] dominance and power in the live performance industry, coerced and/or induced Dileo and Jackson to disregard the agreements with AllGood" is not only conclusory, the "and/or" implies that even Plaintiff does not necessarily believe AEG "coerced" Dileo and Jackson to breach. There are no specific factual allegations in the Amended Complaint that the AEG Defendants were motivated by illegitimate interest or used improper means, and simple business competition and financial self-interest will not support the requisite element for the tort claim in New Jersey. *See Johnson & Johnson*, 525 F. Supp. 2d at 360. The cause of action must be dismissed.

### C. The Dileo Defendants

#### 1. Breach of Contract

The Dileo Defendants first argue that the breach of contract claim asserted against them should be dismissed as a matter of law. Here, too, there is a question of the appropriate law to be applied. In New York, a court must apply the "center of gravity" or "grouping of contacts" choice of law analysis. *See Finance One*, 414 F.3d at 336. "Under the contracts analysis, the court evaluates the 'center of gravity' or 'grouping of contacts', with the purpose of establishing which state has 'the most significant relationship to the transaction and the parties.'" *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 394 (2d Cir. 2001) (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309 (1994)). Courts should consider a variety of factors in this analysis, including the place of contracting, place of negotiation and performance, the location of the subject matter and the domicile or place of business of the contracting parties. *See* Restatement (Second) of Conflict of Laws § 188; *Fieger*, 251 F.3d at 394 ("In developing this test, the New York Court of Appeals relied on the Second Restatement of Conflict of Laws ... "). There is an actual conflict in this case because the elements necessary to sufficiently allege a breach of contract claim in New York and Tennessee differ in ways material to this action, such as the fact that New York requires a Plaintiff to plead performance while Tennessee

does not. *Compare Ervin v. Nashville Peace and Justice Center*, 673 F. Supp. 2d 592, 612 (M.D. Tenn. 2009) *with Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

While the alleged agreements and surrounding circumstances touch upon a number of different states, Tennessee appears to have the most significant relationship to the transaction and parties. Plaintiffs allege in the Amended Complaint, in more factual detail than any other part of the pleading, that the contract negotiations and formation of the two agreements occurred in Tennessee with Frank Dileo and, in part, at Dileo Entertainment's offices. *See* Am. Compl. ¶¶ 24-31. While signed and notarized elsewhere, the contract expressly states that it was "negotiated and agreed in Nashville, TN." Heller Decl., Ex. B at 1. Finally, Plaintiffs allege that the Dileo Defendants are or were domiciled and had their principal place of business in Tennessee. While there might be scattered contacts to other states, the source of the contractual dispute centers in Tennessee.

Plaintiffs argue that New York law should apply due to the New York choice-of-law provision located in the NDA Agreement, as it incorporated the Binder Agreement and intended any disputes over the agreement to be litigated under New York law. First, and most significantly, the NDA Agreement does not on its face appear to be a rider or modification to the Binder Agreement, but rather a wholly separate document and wholly separate agreement between different parties. As noted, *infra*, it was signed by Allocco and Dileo only in their individual capacities (or at least gives no indication that they intended to bind their respective corporate entities), and is also signed by various third parties who have no readily apparent relationship to the Binder Agreement. Moreover, the language of the NDA Agreement states that "[t]he undersigned individual acknowledges that the information contained in the Dileo Entertainment and Touring Agreement ... is confidential," and that the "purpose of disclosure" is "presenting the undersigned individual with certain valuable, confidential, and propriety information." Am. Compl. ¶¶ 1-2. This language strongly suggests that the NDA Agreement was a separate agreement between individuals, who presumably were involved with this planned performance, to keep the details of the process confidential and otherwise not compete with AllGood or the Dileo Defendants. Second, even if the NDA Agreeement was clearly executed by the same parties as the Binder Agreement, there is virtually no indication that the choice-of-law provision intended to incorporate the Binder Agreement. The only reference to the Binder Agreement is a vague allusion at the beginning of the agreement to "the information contained in

the Dileo Entertainment and Touring Agreement ... dated November 25, 2008." Heller Decl., Ex. C ¶ 1. The choice of law provision itself says nothing about the Binder Agreement and nowhere in the document does it say that it is intended to modify or otherwise apply to the Binder Agreement. Plaintiff relies on language that the NDA Agreement "supersedes all previous agreements between the parties," but this clause is virtually pure boilerplate and does not make any specific claim or even an ambiguous reference to the Binder Agreement. Like the Binder Agreement, the NDA Agreement remains somewhat ambiguous, and facts developed through discovery will likely shed more light on its precise meaning and relevance. But it is clear enough at this stage to conclude that the contract on its face was not intended to bind the same parties who signed the Binder Agreement to a New York choice of law provision.

The Dileo Defendants raise three different grounds for dismissal of the breach of contract claim: (1) that it was an unenforceable "agreement to agree;" (2) that Plaintiff fails to allege a necessary condition precedent; and (3) that Plaintiff materially breached the contract first when it failed to pay an initial fee to the Dileo Defendants. The Dileo Defendants also argue that any claims based on the NDA Agreement must likewise be dismissed for failure to allege any actual breach by the Dileo Defendants. While each of these claims have significant merit and may ultimately bear out, the contract and surrounding circumstances are sufficiently nebulous that the breach of contract claim cannot be dismissed on the pleadings

"Under Tennessee common law, a plaintiff seeking damages for an alleged breach of contract must prove: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by the breach of contract." *Ervin v. Nashville Peace and Justice Center*, 673 F. Supp. 2d 592, 612 (M.D. Tenn. 2009) (citing *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs., Ltd.*, 79 F.3d 496, 514 (6th Cir. 1996); *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006)); *see also C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007). AllGood alleges that the Dileo Defendants breached the Binder Agreement because they falsely warranted that Jackson was "under no disability," and agreed to perform the London concert with the AEG Defendants despite allegedly granting exclusive rights to produce this sort of event to Plaintiffs. Am. Compl. ¶¶ 51-56. The Dileo Defendants allegedly violated the NDA Agreement by breaching the nondisclosure, noncircumvention, and noncompete clauses when they agreed to do the concert with the AEG Defendants. *Id.* ¶¶ 62-65.

12

The Dileo Defendants accurately note that letters of intent or "agreements to agree" are generally not enforceable under Tennessee law. Where substantial and necessary terms are left open for future negotiation, such agreements are generally held to be unenforceable. *See, e.g., Four Eights, LLC v. Salem*, 194 S.W.3d 484, 486 (Tenn. Ct. App. 2005); *Gold Science Consultants, Inc. v. Cheng*, No. 3:07-CV-152, 2009 WL 1256664, at *4 (E.D. Tenn. May 4, 2009); *S.K. Services v. FedEx Ground Package System, Inc.*, No. 1:08-CV-158, 2008 WL 5204067, at *3 (E.D. Tenn. Dec. 11, 2008). However, a contract must still be construed based on its own terms and surrounding factual circumstances, and just because it is labeled a "letter of intent" does not necessarily doom it as an unenforceable agreement to agree. "The primary test as to the actual character of a contract is the intention of the parties, to be gathered from the whole scope and effect of the language used, and mere verbal formulas, if inconsistent with the real intention, are to be disregarded." *Gurley v. King*, 183 S.W.3d 30, 43 (Tenn. Ct. App. 2005) (quoting 17 Am.Jur.2d *Contracts* § 1 (1964)); *see also Bolton v. Morgan*, No. 05-2315 MA/P, 2006 WL 840422, at *3 (W.D. Tenn. Mar. 29, 2006).

Here, the Dileo Defendants make a strong showing, based on the plain language of the contract, that the Binder Agreement is merely an agreement to agree and should not be construed as an enforceable contract. The document itself states that it is a "letter of intent" and that "[u]pon receipt of a signed copy of this letter, then we will proceed with full acting contract Agreement at later agreeable date." Heller Decl., Ex. C at 3. The location of the performance is not listed and a number of conditions are at best vaguely described or set to be negotiated at a later date. The contract requires some sort of "written confirmation" from Michael Jackson and possibly the Jackson Family as well. However, while the open-ended nature of so many terms and the language of certain clauses imply that this is merely a letter of intent, there is sufficient factual ambiguity that it would not be appropriate to dismiss as matter of law at the pleading stage. The Binder Agreement also includes the statement that "[t]his contract constitutes a complete and binding agreement between the PURCHASER and the Jacksons (ARTIST/S)." Heller Decl., Ex. C at 3. Further, Plaintiffs allege that the parties intended this agreement to be an enforceable contract. While I am highly skeptical that this in fact amounts to a complete and enforceable agreement, any judgment about the meaning of this ambiguous agreement necessarily requires an inquiry into the actual facts and is better suited for a motion after discovery or a jury.

Defendants next argue that the contract was subject to a condition precedent, in that it was contingent upon receipt of written confirmation from Jackson and the Jackson Family. Tennessee law provides that "[a] party's obligation to perform a contract is relieved if that party in good faith is unable to complete conditions precedent by a closing deadline." *Davidson & Jones Dev. Co. v. Elmore Dev. Co., Inc.*, 921 F.2d 1343, 1350 (6th Cir.1991) (citing *Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn. App. 1986)). Again, there is significant logical force behind Defendants' argument. The Binder Agreement contract language does in fact carve out "120 days to acquirer [sic] written confirmation from all family members involved." Heller Decl., Ex. B ¶ 3(B). However, the language does not expressly state that confirmation is a necessary precondition for effective agreement, or that any performance of the Binder Agreement is subject to the ratification of Jackson or his family. Moreover, while "even without an express contractual provision, a party to a contract must in good faith work to see that the terms of conditions precedent occur," *Davidson*, 921 F.2d at 1351, whether the Dileo Defendants worked in good faith to secure this alleged condition precedent is one that cannot be determined at the pleading stage. This "written confirmation" clause certainly lends even more credence to the Dileo Defendants' argument that no enforceable contract was ever agreed to, but the Amended Complaint recites just enough facts to sufficiently plead a breach of contract claim to survive a motion to dismiss. *See also* Fed.R.Civ.P. 9(c) (conditions precedent need not be alleged with particularity unless denying that a condition precedent has occurred or been performed).

The Dileo Defendants also argue that AllGood's breach of contract claim should be dismissed because Plaintiffs breached the contract first. Specifically, they point to the language that apparently required AllGood to pay $2 million to Dileo "on or before December 31st, 2008" and $400,000 "[i]mmediately upon written confirmation of this deal," Heller Decl., Ex. B ¶ 3(A), and claim that AllGood failed to make these payments. "A party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract." *McClain v. Kimbrough Constr. Co., Inc.*, 806 S.W.2d 194, 199 (Tenn. Ct. App.1990) (citations omitted); *see also Lee Masonry, Inc. v. City of Franklin*, No. M2008-02844-COA-R3-CV, 2010 WL 1713137, at *10 (Tenn.Ct.App. Apr. 28, 2010). The Binder Agreement language does indicate that AllGood needed to pay certain amounts of money to the Dileo Defendants within certain time frames to satisfy their part of the agreement. Also notable,

14

Plaintiffs simply chose not to address whether or not they actually performed their end of the alleged bargain in the motion papers and only generally allege in the Amended Complaint that they "fully performed," *see* Am. Compl. ¶ 68, lending strong credence to the idea that they may in fact not have done so. But unlike New York law, Tennesee does not require a Plaintiff to affirmatively plead performance as an essential element of the claim, and the question of which party breached first requires at least some factual development in a case such as this one.

Finally, the Dileo Defendants claim that AllGood has failed to allege any facts that plausibly infer that they breached the NDA Agreement. However, Plaintiffs do make certain factual allegations about the Dileo Defendant's conduct with regard to NDA Agreement, specifically that they "disclos[ed] information prepared and/or provided by AllGood to third-parties including AEG" and breached noncircumvention and noncompete terms by agreeing to do the London show with AEG. *See* Am. Compl. ¶¶ 64-65. This is certainly not the most detailed or clear pleading by a plaintiff, and, as noted above, I am fairly skeptical that this agreement is even applicable to the Dileo Defendants given the differing signatures and language of the document itself. But Plaintiffs have sufficiently alleged enough facts to state a breach of contract cause of action and the contract is ambiguous enough that it would be improper to conclude at the pleading stage that it does not apply to the Dileo Defendants.

### 2. *Promissory Estoppel*

The Dileo Defendants also seek to dismiss AllGood's promissory estoppel cause of action. Again the parties dispute the proper choice of law to be applied to this claim. Plaintiff seeks to have this Court apply the "interest analysis" for torts, but promissory estoppel is an equitable doctrine that sounds in contract rather than tort. *See, e.g., Ciocca v. Neff*, No. 02 Civ. 5067(LTS)(HBP), 2005 WL 1473819, at *6 (S.D.N.Y. June 22, 2005) (citing Restatement (Second) of Contracts § 90 (1981)); *Amadasu v. Ngati*, No. 05 Civ. 2585(JFB)(LB), 2006 WL 842456, at *8 (E.D.N.Y. Mar. 27, 2006) (same). As such, the "center of gravity" test is applicable and, for the same reasons stated with regard to the breach of contract claim, the proper choice of law here is Tennessee.

The Dileo Defendants argue that the claim must be dismissed because AllGood cannot succeed on a promissory estoppel claim based on a letter of intent and because AllGood otherwise fails to allege the factual elements necessary to support this cause of action. The former argument fails for the same reason that the breach of contract claim cannot be dismissed

on these grounds: while the Binder Agreement certainly looks like a letter of intent, it is sufficiently ambiguous that it cannot be deemed a mere "agreement to agree" at this stage of the proceedings, and it merits factual discovery to clarify the meaning of the agreement and the intent of the parties. The latter argument, whether or not the promissory estoppel cause of action is sufficiently pled, is a closer question.

To succeed on a promissory estoppel claim, a party must show "(1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment." *Chavez v. Broadway Elec. Service Corp.*, 245 S.W.3d 398, 404-05 (Tenn. Ct. App. 2007) (internal citations omitted). "The promise upon which the promisee relied must be unambiguous and not unenforceably vague." *Amacher v. Brown-Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. Ct. App.1991). Here, AllGood alleges that the Dileo Defendants falsely promised that AllGood would be the "exclusive producer and promoter of a Jackson and/or Jackson Family concert during the period of 2009 to 2010." Am. Comp. ¶ 73. Plaintiffs claim to have relied on this promise and, by doing so, sacrificed "other clients and opportunities due to their commitments to the [e]vent" and incurred expenses in setting up the concert based on this promise. *Id.* ¶ 74. To be sure, this is a thinly pled claim, but there are factual allegations about a specific promise between the parties that Plaintiffs opine they relied upon and were damaged as a result. As the Dileo Defendants note, succeeding on a promissory estoppel claim under Tennessee law is a high bar, because it does not liberally apply the doctrine and limits its application to "exceptional cases." *Barnes & Robinson Company, Inc. v. OneSource Facility Services, Inc.*, 195 S.W.3d 637, 645 (Tenn. App. 2006); *see also Sparton Technology, Inc. v. Util-Link, LLC*, 248 Fed. Appx. 684, 689-90 (6th Cir. 2007). While this may present a substantial obstacle for AllGood on summary judgment or at trial, the difficulty of succeeding on a promissory estoppel claim is not sufficient reason for dismissal on a motion to dismiss.

### 3. *Fraud*

Finally, the Dileo Defendants also seek to dismiss AllGood's fraud cause of action for failure to plead sufficient facts to state a claim. There is no need to decide which law applies here, because there is no actual conflict between New York and Tennessee law as to the elements of a fraud claim. *Compare Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553 (2009) ("The elements of a cause of action for fraud require a material misrepresentation of a

16

fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages.") *with Homestead Group, LLC v. Bank of Tennessee*, 307 S.W.3d 746, 751 (Tenn. Ct. App. 2009) ("the defendant made a representation of an existing or past fact; the representation was false when made; the representation was in regard to a material fact; the false representation was made either knowingly or without belief in its truth or recklessly; plaintiff reasonably relied on the misrepresented material fact; and plaintiff suffered damage as a result of the misrepresentation."). Here, AllGood alleges that the Dileo Defendants "knowingly and fraudulently induced AllGood into entering into the Agreements by making misrepresentations of material fact to Plaintiffs and/or failing to disclose materials facts to AllGood, despite having a duty to do so, such that the Dileo Defendants' representations were false representations." Am. Compl. ¶ 79. Plaintiffs also allege that the Dileo Defendants "knew [the representations] were factually false" and had no intention of abiding by them based on their agreement with AEG to do a London show with Michael Jackson, and that AllGood relied on the representations to its detriment and incurred "significant costs and expenses to produce and promote the Event and by foregoing other business opportunities." Am. Compl. ¶¶ 80-81.

Like the claim for promissory estoppel, the factual pleading for fraud in this case are at best thin. Unlike promissory estoppel, however, here Plaintiff must not only meet the standard pleading requirements defined by *Twombly* and *Iqbal*, but must also satisfy the heightened pleading requirements for fraud under Rule 9(b) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 9(b) (must plead "the circumstances constituting fraud or mistake" with particularity). "To satisfy the pleading requirements of Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994). Moreover, "[a]lthough Rule 9(b) permits knowledge to be averred generally, plaintiffs must still plead the events which they claim give rise to an inference of knowledge ... In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible." *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 695 (2d Cir. 2009) (internal quotations and citations omitted). The few facts alleged in Plaintiffs' Amended Complaint are just barely sufficient to save most claims from dismissal, but

17

by no means do they meet the heightened requirement for pleading fraud under Rule 9(b). The cause of action for fraud must be dismissed.

### 4. Permanent Injunction

AllGood also seeks a permanent injunction "enjoining Defendants from producing, performing and promoting the Jackson concerts schedule [sic] for the summer of 2009, or at any time during the 'blackout period.'" Am. Compl. ¶ 98. For the quite obvious reason that 2009 has long past and Michael Jackson passed away, this claim must be dismissed as moot.

### III. CONCLUSION

For the reasons described above, the fraud, tortious interference with contract, and permanent injunction claims are DISMISSED.

With regard to the pending dispute over the deposition of two third parties raised by both the AEG and Dileo Defendants, the parties may have an additional two weeks to secure depositions but this will not interfere with any other pretrial deadlines. The parties are reminded that the deadline for dispositive motions is August 1, 2010 and trial is scheduled for October 2010.

The Clerk of the Court is instructed close this motion and remove it from my docket.

SO ORDERED
June 29, 2010
New York, New York

_____
Hon. Harold Baer, Jr.
U.S.D.J.

18